**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lon Austin FLORENCE, Defendant-Appellant.**

**No. 15689.**

United States Court of Appeals Seventh Circuit.

April 20, 1967.

---

4. This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused.

E. Paul Lanphier, Chicago, Ill., for appellant.

Richard E. Eagleton, U. S. Atty., James G. Hatcher, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, and KILEY, Circuit Judge.

HASTINGS, Chief Judge.

Following a jury trial, defendant Lon Austin Florence was convicted on both counts of a two-count indictment charging him with violations of § 472, 18 U.S.C.A. (possession of counterfeit obligations) and § 473, 18 U.S.C.A. (dealing in counterfeit obligations) on the evening of September 7, 1965.

Defendant was sentenced to imprisonment for a term of seven years on each count, the sentences to run concurrently. He now appeals.

The only question raised on this appeal is whether a conflict of interest on the part of one of defendant's trial counsel existed at the trial and, if so, whether such conflict deprived defendant of his constitutional right to effective assistance of counsel under the Sixth Amendment to the Federal Constitution.

The facts surrounding this controversy are simple and undisputed. The following narrative should adequately frame the issue.

The grand jury indictment against defendant was returned November 24, 1965. After arrest and before arraignment, defendant privately employed counsel of his own choice, John W. Curren. The professional competence of Mr. Curren is not challenged. On December 6, 1965, defendant was arraigned and entered a plea of not guilty.

On January 25, 1966, defendant appeared for trial with his counsel, Curren. At the same time attorney Thomas F. Londrigan, a former Assistant United States Attorney in that judicial district (Southern District of Illinois), entered his appearance as co-counsel for defendant. It appears that defendant had employed Londrigan the previous day.

Londrigan moved for a continuance for the reason that since he had formerly served as an Assistant United States Attorney, he might have had a previous official connection with certain evidence, obtained as a result of a raid on defendant, which might be introduced at trial. Government counsel then assured the court and defendant that the government's intended proof would not contain matters which were the official concern of Londrigan while he was in office, and that if such matters were brought out it would be by the defense. The trial court denied the motion for continuance.

Curren and Londrigan both participated in the ensuing trial of the defendant. The government's case in chief was concluded without reference to any matters which concerned Londrigan's former association with the office of the United States Attorney.

Defendant voluntarily took the witness stand and testified in his own defense. He was questioned on direct examination by Londrigan. We have carefully examined the transcript and it reveals that the

issue of criminal intent and knowledge, upon which evidence obtained in the raid previously mentioned may have had a bearing, was raised by defendant's testimony.

On direct examination, defendant testified concerning his prior criminal record and his imprisonment for a total of forty years on Dyer Act and robbery convictions. Defendant then testified concerning his business dealings with a government witness, Andrews, and his sale of a suit, an overcoat, watch and some tires to Andrews.

In answer to Londrigan's question on direct examination, "Do you have any bills or receipts or bills of sale or anything for this?", defendant answered, "Well, I tell you, the last month—not the last, the raid before that, they took all, every piece of paper I had in that house and they haven't returned it." He continued on direct examination to relate other dealings with Andrews concerning the purchase of an automobile; Andrews' introduction to him of a man named Motto; talk about the sale of jewelry, including two rings; questions by Motto about counterfeit money; and the final sale by defendant of the two rings for $500.

On cross-examination, government counsel questioned defendant about these occurrences. It was established that the prior raid alluded to by defendant on direct examination occurred nine or ten months before the offense for which defendant was being tried and that counterfeit money was found on defendant's premises during that raid.

During such cross-examination, following an objection by Londrigan concerning the scope of the cross-examination, a conference was had in the court's chambers, outside the hearing and presence of the jury. Londrigan raised the question of whether there was a conflict of interest on his part because of the testimony concerning, and his official connection with, the prior raid of defendant's premises. After considerable discussion, it was the opinion of the court and all counsel that there was no such conflict of interest.[1]

Upon reading the transcript, we are convinced that no conflict of interest existed. We are further convinced that the record discloses no harm or prejudice to defendant; that there was no showing of lack of effective assistance of counsel at the trial; and that there was nothing to indicate that the trial court imposed representation upon defendant which resulted in a conflict of interest on the part of the attorney.

On the contrary, the record is clear that defendant was ably represented at the trial by two private counsel of his own choice without any harm or prejudice to him. The most that can be said is that Londrigan was being exceedingly cautious to make sure that he was not improperly proceeding as co-counsel for defendant.

In our judgment, this question was fairly and properly resolved and there is not the slightest showing that defendant was deprived of his constitutional right to effective assistance of counsel under the Sixth Amendment. United States v. Cozzi, 7 Cir., 354 F.2d 637 (1965), cert. den., 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966). Further, we find nothing in the record in this case to indicate that the proscriptions laid down in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), were in any way violated.

On appeal, defendant was ably represented by E. Paul Lanphier, a reputable member of the Chicago Bar, who was appointed by this court pursuant to the Criminal Justice Act of 1964. We thank him for this service.

The judgment of conviction is affirmed.

Affirmed.

---

1. It appears from the record that defendant was provided with statements of all governmental witnesses, under 18 U.S.C.A. § 3500, including that of Illinois Agent Stevens, who testified concerning his investigation leading to the prior raid in December, 1964.